UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| APRIL A. SMITH,<br>      Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,[1]<br>Deputy Commissioner, Social Security<br>Administration,<br><br>      Defendant. | CIVIL ACTION<br>NO. 16-40105-TSH |

# MEMORANDUM OF DECISION AND ORDER
March 31, 2019

HILLMAN, D.J.

This is an action for judicial review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "SSA") denying the application of April A. Smith ("Plaintiff") for Social Security Disability Insurance Benefits. This Memorandum of Decision and Order addresses Plaintiff's Motion To Reverse Or Remand The Decision Of the Commissioner Of Social Security (Docket No. 20) and the Motion To Affirm The Commissioner's Decision (Docket No. 27). For the reasons set forth below, Defendant's motion is ***granted*** and Plaintiff's motion is ***denied***.

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017, replacing Carolyn W. Colvin. See Fed. R. Civ. P. 25(d). On March 6, 2018, the Government Accountability Office determined that as of November 17, 2017, her status violated the Federal Vacancies Reform Act of 1988, 5 U.S.C. § 3349(b).

**Discussion**[2]

The parties are familiar with the factual history of this case, the standard of review, and the applicable five-step sequential analysis. Accordingly, the court will review the procedural and substantive history of the case as it relates to the arguments set forth by the claimant, Smith.

On February 24, 2014, Smith protectively filed an application for a period of disability and disability insurance benefits, and an application for supplemental security income, alleging disability beginning December 18, 2012. On May 16, 2014, Smith completed a disability report in which stated that the only physical and mental conditions (including emotional or learning problems) that limit her ability to work were three physical conditions: fibromyalgia, back pain and migraines. (AR. 231). On September 9, 2014, Smith completed a Function Report in which she alleged that she had been diagnosed with fibromyalgia and that her symptoms include: muscle weakness; neck, wrist, finger and shoulder pain; headaches/migraines; vertigo, nausea, and dizziness; chronic fatigue; lower back, hip and knee pain; impaired concentration, understanding and memory; cognitive loss; and depression and anxiety. (*Id.*, at 259-66). Smith had worked, despite these symptoms, until she suffered a fall in December 2012, which led to an increase in the intensity of her body pain such that she could no longer perform activities of daily living "independently, appropriately, effectively[,] and on a sustained basis.". (*Id.*, at 266). Smith further reported that she could not walk, sit or stand more than 20-30 minutes without becoming exhausted, and that in a typical week, she had 3 bad days, 3 medium days and 1 good day. Moreover, on bad days, she basically could do nothing, and even on "good" days, she had to lie

---

[2]A transcript of the Social Security Administration Official Record (*"AR."*) has been filed with the court under seal. (Docket No. 18). Citations to the AR page numbers are those assigned by the agency and appear on the lower right hand corner of each page.

down and rest for about 2 hours during the course of the day. (*Id.*, at 259, 266). Smith's claims were denied on October 20, 2014.

On February 12, 2015, smith completed a second Function Report (*Id.* at 275-82), in which her responses were substantially identical to her responses in previous Function Report, except that she alleged that since September 2014, she had developed "urinary frequency issues" and her anxiety and depression had worsened. *(Id.,* at 276, 282). Her claims were denied on reconsideration on June 5, 2015. Smith then filed a request for a hearing before an Administrative Law Judge ("ALJ"), which was held on February 18, 2016. On February 29, 2016, the ALJ denied her claim. Smith appealed the ALJ's decision; on May 31, 2016, the Appeals Council denied her request for review.

*The ALJ's Findings*[3]

The ALJ concluded that Smith has not been under a disability, within the meaning of the Social Security Act ("Act") from December 12, 2012 through the date of the decision (February 29, 2016). In so holding, the ALJ applied the familiar five-step sequential evaluation process for determining whether an individual is disabled. The ALJ made the following findings:

    1. Smith meets the insured status requirements of the Act through December 31, 2017.

    2. Smith has not engaged in substantial gainful activity since December 18, 2012 (the alleged onset date).

    3. Smith has the following severe impairments: fibromyalgia, headaches, major depression, intellectual development disorder, panic disorder, opiate abuse in early remission, and cocaine abuse in early remission.

    4. Smith does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. More specifically, with regards to Smith's fibromyalgia, she does not suffer symptoms which meet the necessary requirements for the applicable listing. As to her mental impairments, she only has moderate restrictions in regards to her daily

---

[3] The ALJ's Decision can be found at AR pp. 13-45.

living, as she is capable of partake in several activities, such as preparing her own meals, clean, wash laundry and iron on good days, drive, and shop in stores for basic necessities. The ALJ further found that Smith has moderate difficulties with respect to social functioning and concentration, persistence and pace, and has not had any episodes of decompensation of extended duration. Given these findings, the ALJ determined that Smith does not meet the "paragraph B" or "paragraph C" criteria for mental impairment. The ALJ separately examined Smith meets the "paragraph C" criteria for mental impairment and concluded that she does not.

5. Smith has the residual functional capacity ("RFC") to perform sedentary work, with specified limitations on lifting, carrying, standing and walking during the workday, as well as climbing, balancing and stooping. Smith must avoid, kneeling, crouching, crawling, hazards and interactions with the public. Smith is limited to unskilled work, in a low stress setting and to work that requires dealing with things rather than people.

While the ALJ found that Smith's medically determinable impairments could be expected to cause the alleged debilitating symptoms of which she complained, the ALJ did not find Smith entirely credible regarding the intensity, persistence and limiting effects of such symptoms. More specifically, the ALJ found significant inconsistencies between Smith's subjective allegations in disability reports and function reports, her hearing testimony and the record medical evidence. The ALJ further found that Smith has provided inconsistent information regarding her drug abuse to examining sources and to the ALJ. The ALJ also found that the medical evidence of record, while confirming a history of the mental disabilities of which Smith complains, does not reveal a treatment history consistent with what one would expect to find for a totally disabled individual—she has not had frequent treatment or hospital visits due to psychiatric episodes, and does not receive any psychiatric counseling for her alleged depression or panic disorder. The ALJ also went into a detailed analysis of the medical records relating to Smith's physical symptoms, and her alleged substance abuse problems and detailed why she accepted or rejected the conclusions reached by various medical professionals. Ultimately, the ALJ determined that the lack of objective support for Smith's complaints, and questions as to her credibility diminished the persuasiveness of her subjective complaints and alleged limitations.

6. Smith is unable to perform any past relevant work.

7. Smith is defined as a "younger individual" as of the alleged disability onset date.

8. Smith has limited education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because claimant is not "disabled."

4

10. Considering Smith's age, education, work experience and RFC, there are jobs which exist in significant numbers in the national economy that Smith can perform ad therefore, a finding of not disabled is appropriate. More specifically, Smith could perform the requirements of representative occupations such as inspector (300 jobs in the local economy, 10,000 jobs nationwide), and polisher (350 jobs in the local economy, 7,000 jobs nationwide).

11. Smith has not been under a disability, as defined in the Act, from December 12, 2012, through the date of decision.

## Discussion

*Treating Sources/ALJ's Interpretation of Medical Data*

Plaintiff first argues that the ALJ improperly discredited the medical opinion provided by her treating provider and failed to support her reasons for doing so. A treating source's opinion on the nature and severity of a claimant's impairments is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and ... not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). In the First Circuit, an opinion is "not entitled to greater weight merely because" it is provided by a "treating source." *Barrientos v. Sec'y of Health & Human Servs.*, 820 F.2d 1, 2-3 (1st Cir. 1987) (emphasis added); see *Arroyo v. Sec'y of HHS*, 932, F.2d 82, 89 (1st Cir. 1991) ("This Circuit does not require ALJ's to give greater weight to the opinions of treating physicians."). However, "even when an ALJ does provide reasons for discounting a treating source opinion, remand is proper if those reasons are 'unpersuasive' or 'significantly flawed.' " *Santana v. Colvin*, 2016 WL 7428223, at *3 (quoting *Johnson v. Astrue*, 597 F.3d 409, 411-12 (1st Cir. 2009) ). According to agency policy, "the decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the

weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (emphasis added).

ALJ's may "piece together the relevant medical facts from the findings and opinions of multiple physicians;" *Evangelista v. Sec'y of HHS*, 826 F.2d 136, 144 (1st Cir. 1987); and may "downplay the weight afforded a treating physician's assessment of the nature and severity of an impairment where . . . it is internally inconsistent or inconsistent with other evidence in the record . . . ." *Arruda v. Barnhart*, 314 F. Supp.2d 52, 72 (D.Mass. 2004). Further, the ALJ, is not bound to accept the treating physicians' conclusions about whether a patient is disabled or not. *See* 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). Further, the question of a claimant's RFC is among issues reserved to the commissioner, with respect to which even the opinion of a treating source is entitled to no "special significance" and cannot be assigned controlling weight. *Id.* §§ 404.1527(d)(2)-(3), 416.927(d)(2)-(3); Social Security Ruling 96–2p, reprinted in *West's Social Security Reporting Service Rulings* 1983–1991 (Supp. 2013) ("SSR 96–2p"), at 112.

In the instant case, the ALJ gave some, but not great, weight to Dr. Fraser's opinions and found that they were somewhat inconsistent with other substantial evidence contained in the plaintiff's record. In particular, the ALJ found that Dr. Fraser's assessment that Plaintiff was "disabled for the foreseeable future" was also inconsistent with the medical evidence. (AR. 28) Whether a claimant's application for disability benefits proves that Plaintiff is disabled is an issue reserved for the Commissioner. SSR 96-5p, 1996 WL 374183, at *3; see *Foley v. Astrue*,

2010 WL 2507773, at *8 (D.Mass. 2010).[4] The ALJ found that Dr. Fraser's opinion was undermined by the Plaintiff's own reports of her ability to perform activities of daily living. As the ALJ emphasized, Plaintiff testified that she was sometimes able to perform light household tasks, shop, and attend her medical appointments. The ALJ also referenced Plaintiff having taken appropriate medication for her pain and that it has been effective at improving her functioning. (AR. 32).

Plaintiff next argues that the ALJ improperly interpreted raw medical data without the guidance of a medical expert when she assigned Plaintiff with additional restrictions, which Plaintiff contends was based on additional medical evidence that was provided at the hearing. "With a few exceptions ... an ALJ, as a lay person is not qualified to interpret raw data in a medical record." *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1996). Therefore, for an ALJ to make a disability determination, "an expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person." *Santiago v. Sec'y of Health & Human Servs.*, 944 F.2d 1, 7 (1st Cir. 1991). In addition, an ALJ may not simply disregard relevant evidence, particularly when that evidence bolsters the claimant's entitlement to benefits. *See Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("The ALJ was not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion."); *Dedis v. Chater*, 956 F.Supp. 45, 51 (D.Mass 1997) ("While the ALJ is free to make a finding which gives less credence to certain evidence, he cannot simply ignore ... the body of evidence opposed to ... [his] view.") (quotation marks and citations omitted).

---

[4] Plaintiff makes the same argument with reference to the opinion of Dr. Eric Lupoli, DO, that she was "unable to obtain and retain work in a competitive environment," and the statement of Dr. Samuel Poon that he "agreed with" Plaintiff's application for Social Security benefits.

7

The ALJ adopted essentially all of the limitations identified by the State agency doctors, who reviewed the evidence and conducted function-by-function analyses of Plaintiff's mental and physical abilities. The ALJ also set some restrictions that went beyond those identified by the State agency physicians, in the RFC finding – limitations that offered Plaintiff a more restrictive RFC in the areas of work that requires: sedentary instead of light work; no bending instead of occasional bending; and no contact with the general public instead of non-sustained interaction. (AR. 21). Plaintiff does not specify how she prejudiced by this more restrictive RFC, insofar as there is any error on the part of the ALJ, it is harmless.

Plaintiff also argues that the ALJ failed to analyze whether the IQ score elicited by Dr. Nowell met or equaled Listing 12.05(c) because she had a full scale IQ score of 69. An IQ score in the range of 60-70 is one of the four elements contemplated by Listing 12.05(c). The three other elements of the Listing are: (i) deficits in adaptive functioning during the period when the claimant seeks benefits, (ii) manifestation of those deficits during the developmental period (i.e., before age 22), and (iii) an impairment other than low IQ that imposes additional and significant work-related limitation of function. Plaintiff points to no evidence or report on the record to suggest that Plaintiff met any other element of the Listing. The ALJ reviewed and summarized the report of Dr. Nowell, but chose to give it little weight, based on the other mental status examinations as well as her lack of emergency room admissions for psychiatric reasons, no counseling beyond the monthly Methadone clinic, and no psychiatric hospitalizations. (AR. 37)

*Severe Impairments in RFC Assessment*

Next, Plaintiff argues that the ALJ erred because she ignored medical evidence and the opinions of state agency consulting physicians and did not assess more limitations to her RFC to account for her severe impairments that the ALJ found at Step 2. The Commissioner argues that

8

the RFC is supported by substantial evidence. In Plaintiff's RFC finding, the ALJ limited Plaintiff to sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a), with specified limitations on lifting, carrying, standing and walking during the workday, as well as climbing, balancing and stooping. Plaintiff must avoid, kneeling, crouching, crawling, hazards and interactions with the public. In her argument, Plaintiff has failed to identify any specific limitation that the ALJ erroneously excluded from the RFC finding. The court is not inclined to do so for her. *See Perez v. Colvin,* 2014 WL 6905599, at *3 (D. Mass. Dec. 4, 2014)*, citing Carlton v. Social Sec. Admin. Com'r,* No. 10–00463, 2011 WL 4433660, at *5 (D.Me. Sept. 21, 2011) (claimant has the burden to put forth the medical evidence necessary to establish his impairments and the degree to which they limit his functional capacity).

From the full summary review of Plaintiff's medical records in her decision, it is clear that the ALJ determined Plaintiff's RFC by considering all of the medical evidence available to her and incorporated appropriate limitations based on those conditions. The RFC "is the most you can still do despite your limitations." 20 C.F.R 416.945(a)(1) (emphasis added). Thus, the ALJ's RFC conclusion only needed to assess the necessary conditions for Plaintiff to work given his limitations. It is left to an administrative law judge to resolve conflicts in evidence and, where such determinations are supported by the record, they are to be affirmed. *See Irlanda Ortiz v. Secretary of Health and Human Serv.*, 955 F.2d 756, 769 (1991) (even if the administrative record could support multiple conclusions, a court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.). Finally, in this circuit, it is not reversible error for an ALJ's failure to recontact Plaintiff's doctors to obtain more information, particularly where, as here, she was

represented by counsel at the hearing and counsel agreed that the record was complete. *See Shaw v. Sec'y of Health and Human Servs.*, 1994 WL 251000, *5 (1st Cir. 1994).

*Plaintiff's Fibromyalgia and the ALJ's Credibility Determination*

The ALJ explicitly found that Plaintiff's fibromyalgia was a severe impairment, meaning it "significantly limit[ed] [her] ability to perform basic work activities" (AR. 17). The ALJ then explicitly addressed Plaintiff's fibromyalgia throughout her decision, then included limitations in the RFC finding to accommodate that impairment (AR. 19-38). The SSA acknowledges that fibromyalgia may be a disabling condition, but requires sufficient objective evidence to support a finding that this impairment so limits a claimant's functional abilities that it precludes him or her from working. *See, e.g., Medina-Augusto v. Comm'r of Soc. Sec.*, Civil No. 14-1431 (BJM), 2016 WL 782013, at *7 (D.P.R. Feb. 29, 2016). With respect to fibromyalgia, "courts ... have recognized ... that 'there are no objective tests which can conclusively confirm [fibromyalgia]." *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2nd Cir. 2003) (*quoting Preston v. Sec. of health and Human Servs.*, 854 F.2d 815, 818 (6th Cir. 1988)). "It is therefore a medically sound and appropriate diagnostic tool for a physician to rely on a patient's subjective reporting of her pain." *Ortiz v. Colvin*, 2015 WL 6182470, at *7 (D. Mass. Oct. 20, 2015) (emphasis added).

Here, the ALJ did not reject Plaintiff's statements of pain; indeed, the ALJ found Plaintiff's fibromyalgia a severe impairment. Instead, the ALJ questioned the limitations resulting from the pain. The ALJ concluded that Dr. Fraser's findings conflicted with Plaintiff's everyday activities. *See Teixeira v. Astrue*, 755 F.Supp.2d 340, 347 (D. Mass. 2010) ("While a claimant's performance of household chores or the like ought not be equated to an ability to participate effectively in the workforce, evidence of daily activities can be used to support a negative credibility finding.").

10

Plaintiff relies on *Johnson v. Astrue*, 597 F3d 409 (1st Cir. 2009), in which the court reversed the ALJ's decision to give little weight to a treating expert's opinion where the expert relied on the claimant's subjective allegations. In that case, the court explained that objective evidence plays a very limited role in a diagnosis of fibromyalgia. *Id*. at 412. In *Johnson*, the First Circuit found an ALJ's evaluation of a claimant's fibromyalgia to be "significantly flawed," in part, because the ALJ improperly considered the lack of objective findings substantiating the claimant's condition. *Id*. at 412. In other words, fibromyalgia is primarily a subjective diagnosis, and the absence of objective symptoms does not, by itself, preclude such a diagnosis. I*d*. at 411–414. The Commissioner distinguishes this case from *Johnson*, arguing that Johnson concerned the standards for *diagnosing* fibromyalgia, whereas this case involves determining whether plaintiff's diagnosed fibromyalgia was disabling. Although Plaintiff accurately summarizes the holding in *Johnson*, this Court agrees with the Commissioner that the holding can be set apart.

Plaintiff next argues that, *inter alia*, the ALJ improperly relied on her testimony concerning her activities of daily living in making a determination of her credibility. Social Security Ruling 96-7p explains how an ALJ must evaluate a claimant's credibility under the regulations. *See* SSR 96-7p, 1996 WL 374186. The ruling requires an ALJ to consider a claimant's statements in light of the entire record, and to include in the decision specific reasons for the credibility finding that are supported by evidence. *Id*. at *2-4. Specifically, an adjudicator must consider the following factors when evaluating the nature and severity of a claimant's symptoms:

> (1)the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures the claimant uses or has used to relieve pain or other symptoms; and (7) any other factors

concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 1529(c)(3); 416.929(c)(3); SSR 96-7p, 1996 WL 374186 at *3; see also *Avery v. Sec'y of Health & Human Servs.*, 797 F.2d 19, 29 (1st Cir. 1986) (describing factors ALJs must consider in evaluating a claimant's subjective description of pain). In *Avery*, the First Circuit held that an ALJ must consider certain factors in making a determination about a claimant's subjective complaints about pain or other symptoms. *Avery*, 797 F.2d at 29. The relevance of the factors varies depending on a claimant's impairments and symptoms, and the ALJ "need not expressly discuss every enumerated factor." *Balaguer v. Astrue*, 880 F. Supp. 2d 258, 268 (D. Mass. 2012). *Avery* is understood to require ALJs to consider the *Avery* factors at the hearing and in reaching their determination, but it does not require that the ALJ provide "an explicit written analysis of each factor." *See Vega v. Astrue*, No. 11-cv-10406-WGY, 2012 WL 5989712, at *8 (D. Mass. 2012). Further, in a Social Security Disability case, "[a] fact-finder's assessment of a party's credibility ... is given considerable deference and, accordingly a reviewing court will rarely disturb it." *Anderson v. Astrue*, 682 F. Supp. 2d 89, 96 (D.Mass. 2010); see also *Frustaglia v. Sec'y of Health and Human Servs.*, 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings.").

At the hearing, Plaintiff testified to factors that aggravate and precipitate symptoms of her conditions. Plaintiff also testified about the efficacy and side effects of her medication as well as the ways in which her conditions and their symptoms limit his ability to function in a work environment. The ALJ asked Plaintiff numerous questions concerning her daily activities, including routine, social life, family, and hobbies and throughout the hearing, questioned

concerning the nature, location, onset, duration, frequency, and intensity of her symptoms. These questions and testimony indicate that the ALJ undertook a comprehensive consideration of the *Avery* factors in reaching a determination regarding the credibility of Plaintiff's subjective complaints. Thus, the record shows that the ALJ adequately considered the *Avery* factors in reaching her credibility decision.

The test here is to determine whether the Commissioners' decision was supported by substantial evidence. A claimant is not guaranteed disability benefits from the presence of an impairment; she must demonstrate an inability "to participate in any substantial gainful activity by reason of any medically determinable physical or mental impairment...." *Rohrberg v. Apfel*, 26 F.Supp.2d 303, 309 (D.Mass. 1998) (citing 42 U.S.C. § 423(d)(1)(A) and 1382c (a)(3)(A)). The impairment also must be of such severity that the claimant is not only unable to perform her previous work but also, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Id*. Accordingly, the Commissioner is entitled to judgment in her favor.

## Conclusion

For the reasons set forth above, Plaintiff's Motion for Judgment on the Pleadings Reversing Decision of the Commissioner (Docket No. 20) is ***denied*** and Defendant's Motion for Order Affirming the Commissioner's Decision (Docket No. 27) is ***granted***.

**SO ORDERED**.

/s/ *Timothy S. Hillman*
TIMOTHY S. HILLMAN
UNITED STATES DISTRICT JUDGE